**UNITED STATES of America,**
**Plaintiff,**

v.

**James S. DUARDI et al., Defendants.**

**No. 23939–1.**

United States District Court,
W. D. Missouri, W. D.

Feb. 28, 1973.

Bert C. Hurn, U. S. Atty., Gary Cornwell, Strike Force, Kansas City, Mo., for plaintiff.

Michael J. Drape, Kansas City, Mo., for Duardi.

Lawrence F. Gepford, Kansas City, Mo., for Brancato.

David R. Freeman, Federal Public Defender, Kansas City, Mo., for Bishop.

Patrick A. Williams, Tulsa, Okl., for King.

Roehm A. West, Tulsa, Okl., for Husong.

Stephen Jones, Oklahoma, City, Okl., for Grayson.

## MEMORANDUM OPINION AND ORDER DIRECTING FURTHER PROCEEDINGS

JOHN W. OLIVER, District Judge.

This case presents important questions concerning the proper application of Sections 3575–3578, Title 18, United States Code. The position taken by the government has required detailed examination of the statute and its Congressional history.

### I.

The government, prior to trial, purportedly in complaince with § 3575(a), Title 18, United States Code, filed an *in camera* notice with another judge of this Court which stated in substance that the attorney charged with the prosecution of this case had reason to believe that each defendant was a "dangerous special offender" and therefore subject to the imposition of sentence under § 3575(b), Title 18, United States Code. That notice stated that the government believed all the defendants were "dangerous special offenders" for the reason that the violations alleged in the indictment* were within the definition of § 3575(e)(3). No mention whatever was made of § 3575(f) in the notice filed pursuant to § 3575(a).

In our memorandum and order of January 2, 1973, 384 F.Supp. 856, we stated that "[t]he complicated procedure established by those sections [§§ 3575–3578] makes clear that even though one may be found to be a 'special offender' within the meaning of § 3575(e), he may not properly be sentenced under that section unless he also be found to be 'dangerous' within the meaning of § 3575(f)." We specifically directed attention to the fact that "Subsection (f) expressly provides that a defendant may be considered to be 'dangerous' for purposes of sentencing only if it is determined that 'a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant.'" We also noted that "[t]he legislative history of § 3575 makes clear that both a finding that a particular defendant is a 'special offender' within the meaning of subsection

---

* Count I alleged a conspiracy in violation of Section 371 to violate Section 1952, both of Title 18, U.S.C.; Count II alleged a substantive violation of Section 1952. Count I was separated for trial; all defendants were convicted.

(e) and also is 'dangerous' within the meaning of subsection (f) must be made before the procedures outlined in that section may be utilized."

In our memorandum and order of January 2, 1973, after indicating our agreement with the suggestion of all parties that they be afforded an opportunity to state their views as to what would be appropriate procedures pursuant to § 3575 under the circumstances of this case, we entered various orders, which included the following:

> ORDERED that within twenty (20) days the government shall prepare, serve, and file an appropriate statement in which it shall advise the Court in regard to all cases in which sentences have been imposed pursuant to Section 3575 et seq., and to attach transcripts of the proceedings in such cases, if any, so that this Court may have the benefit of the experience established in such cases. It is further

> ORDERED that within twenty (20) days, the government shall prepare, serve, and file a statement of the evidence it intends to adduce in order to support a finding of dangerousness, as required by § 3575(f) of Title 18, United States Code.

The government's response to that order filed January 22, 1973 reflects either a misunderstanding or an apparent disregard of the explicit provisions of § 3575(f), the careful and lengthy Congressional history and purpose of §§ 3575–3578, and the specific order of this Court that the government file a statement of the evidence it intends to adduce "in order to support a finding of dangerousness, as required by § 3575(f) of Title 18, United States Code."

Suggestions in the government's response have focused attention to facets of this case which have not heretofore been given appropriate consideration. Those matters require a much fuller discussion than would have otherwise been necessary.

## II.

In response to our order to obtain the benefit of the experience of other courts, the government stated on the first page of its response that "the case at bar is the first case in which the Department of Justice has asked that this statute be invoked since the statute became effective on October 15, 1970."

The files and records of this Court show that on November 15, 1971, in United States v. Civella, et al., No. 23562–3, at the time of arraignment and in apparent violation of that portion of § 3575(a) which provides that "[i]n no case shall the fact that the defendant is alleged to be a dangerous special offender . . . be disclosed . . . to the presiding judge without the consent of the parties," the government in fact filed a § 3575 notice with the Honorable William H. Becker, Chief Judge of this Court, who was the presiding judge in that case.

■ The government's representation that this case is the first case in the United States in which the Department of Justice has asked that § 3575 be invoked could be accurate only if it is assumed that the Department did not "ask" that the § 3575 notice be filed in the *Civella* case. Principles stated in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104, make it clear that counsel representing the United States can no longer plead ignorance of actions taken by other government counsel. Certainly, if staff lawyers in a State prosecutor's office must, as Chief Justice Burger stated in Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 let "the left hand know what the right hand is doing," the same thing must be true in regard to government Strike Force attorneys who apparently are a part of the Department of Justice itself, rather than members of a United States District Attorney's staff. See former Assistant Attorney General Will Wilson's article in 46 Notre Dame

Lawyer, 41, 44 (Fall, 1970), to which we will later make reference.

Considerations of accuracy to one side, it is important that we give brief notice to the 1971 case of *Civella*, the first case in this district in which the government filed a § 3575 notice, because of advice given this Court by the government in that case.

The defendants in *Civella* promptly filed a motion to strike the § 3575 notice. The government initially filed a response on December 6, 1971, in which it suggested that it would be "more appropriate to postpone consideration of this motion involving a serious constitutional issue . . . until after trial." Five months later, however, on May 9, 1972, the government filed a motion to withdraw the § 3575 notice initially filed on November 19, 1971, "pending further review of the Department of Justice policy concerning the class of cases in which such special sentencing procedures should be actively pursued by the government."

██ It will obviously be helpful for this Court to be advised of the policy which apparently prohibited any effort on the government's part to invoke §§ 3575–3578 from the date those statutes became law in 1970 except in two cases, both of which happened to pend in the Western District of Missouri. Our order will accordingly request the government to provide us with the various policy guidelines which have been promulgated from time to time by the Department of Justice as those policy guidelines relate to enhanced sentencing under §§ 3575–3578.

### III.

The government's statement in *Civella* in regard to the "further review" of policy and the manner in which the government apparently violated § 3575(a) in connection with that case focused particular attention on the question of whether the § 3575 notice filed in this case complies with the express provisions of § 3575(a). Our order will request the government's views in regard to that question for reasons we now state.

The relevant portion of § 3575(a) provides:

> (a) Whenever an attorney charged with the prosecution . . . has reason to believe that the defendant is a dangerous special offender, such attorney . . . may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) *setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender.* (Emphasis ours.)

The notice filed in this case does not set anything out with particularity. Indeed, the single sentence which apparently purported to set out "with particularity the reasons why such attorney believes the defendant to be a dangerous special offender" is confined to a conclusory statement which did no more than paraphrase the definition for a "special offender" within the meaning of "§ 3573(e)(3) [sic]," (an obvious reference to § 3575(e)(3).)

No reasons whatsoever are stated in the notice which would indicate any reason why the government believed that any particular defendant in this case is "dangerous" within the meaning of § 3575(f). That section, as we pointed out in our memorandum of January 2, 1973, expressly provides that "a defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant."

It is obvious from other portions of the government's response that it does not believe that either it or any court need pay any substantial attention to the Congressional definition of "dangerous" as provided in § 3575(f). We do not believe that the government's

position is tenable in light of the Congressional history which led to the enactment of §§ 3575–3578.

Senate Report No. 91–617 of the Senate Judiciary Committee to accompany S.30 noted that "title X of S.30 (which eventually became §§ 3575–3578) was derived from title VIII of S.30 as originally introduced and was also based on S.976 introduced by Senator Tydings on February 7, 1969." That report noted in its conclusion on page 100 that "clarifying and other amendments have been made at the suggestion and with the approval of the Department of Justice."

The Department of Justice's comments on S.30 forwarded to Senator McClellan by former Attorney General Mitchell, were made a part of the Senate Report. That Justice Department memorandum pointed out that what had been title VIII "raises serious problems in three general areas—specificity of definitions and categories of offenders, procedures for making determinations, and the appeal provisions."

The section-by-section analysis of the Senate Report reflects the changes made and stated in regard to the notice provisions of subsection (a) of § 3575 the following:

Subsection (a) provides that whenever an attorney charged with the prosecution . . . has reason to believe that the defendant is a dangerous special offender, *see proposed subsections (e) and (f) below,* the attorney may sign a reasonable time before trial or acceptance of plea and amend a notice (1) specifying that the defendant is a dangerous special offender who upon conviction is subject to the imposition of a sentence under subsection (b) below, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender, and that the allegation shall not be disclosed to the jury. (P. 162)

■ We believe it obvious, as we stated in our memorandum and order of January 2, 1973, that the Congress contemplated that a court must find a particular defendant to be *both* a "special offender," as defined in subsection (e), and also to be "dangerous," as defined in subsection (f), before an enhanced sentence may be properly imposed in regard to a particular defendant.

Of particular significance in regard to the importance with which the Congress considered the notice requirement of § 3575(a) is the statement on the same page of the Senate Report which states that:

The proceeding may not be initiated unless there is "reason to believe" the defendant is a dangerous special offender. See Minnesota v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940).

The procedural approach of title X was defended on page 82 of the Senate Report by its quotation from the comment to § 7.08 of the Model Penal Code which stated that "fairness demands a hearing, focused on the precise question of the existence of the grounds for such a sentence with notice to the defendant of the ground proposed." And, again on page 90, the Senate Report defended the procedure established by directing attention to the fact that such procedures, as amended "include express guarantees of rights to *notice,* a hearing, substantial presentence report disclosure, counsel, compulsory process, cross-examination of witnesses who appear, and record findings and reasons for the sentence." House Report No. 91–1549 on S.30, published in U.S.Code Congressional and Administrative News, 91st Cong., 2nd Sess., 1970, p. 4007 et seq., used language on page 306 in its section-by-section analysis which substantially repeated that quoted from the Senate Report.

Last January 12, 1973, Senator McClellan, in commenting on his introduction of current S.1, the "Criminal Justice Codification, Revision, and Reform Act of 1973," for himself, Senator Ervin and Senator Hruska, directed attention

to the article entitled "The Organized Crime Control Act (S.30) or Its Critics: Which Threatens Civil Liberties," which he wrote and published in 46 Notre Dame Lawyer 57 (1970), (Vol. 119 Cong.Record S. 562). In that article he defended an attack on the notice procedures ultimately provided in § 3575 (a), which, as he correctly stated, had been substantially changed during the development of the legislation. Senator McClellan stated that "the issue of 'dangerousness' was added to those on which the defendant is given a hearing" and, of particular importance, he stated that "the notice provided to a defendant accused as a dangerous special offender was changed to add the grounds for considering him 'dangerous.'" (Id, 172).

We recognize, of course, that § 3575 (a) provides that the government attorney "may amend" a § 3575 notice. The question of whether any amendment would be proper in this case is directly related, however, to the validity of the government's general view in regard to § 3575(f).

Our order will direct the government to state its views in regard to whether the notice filed in this case is in compliance with the requirements of § 3575(a), and, if not, to state whether it may wish to seek leave to be permitted to amend.

### IV.

The position which the government attempts to maintain in regard to § 3575(f) reveals that, although it gives apparent recognition to the reqirements of § 3575(f), its real position is that those requirements may virtually be ignored so far as the notice requirements of § 3575(a) are concerned. On page 7 of its response the government says that it agrees "with the Court's statements on page 7 of its order" which stated that a particular defendant could not be properly sentenced under § 3575 unless it was found that a particular defendant was a "special offender," within the meaning of subsection (e), and also was found to be "dangerous," within the meaning of subsection (f) of § 3575. It is quite clear, of course, that the government's apparent agreement is not real. For it is clear that it did not even attempt to state even generally in its notice any reason for its stated belief that any of the defendants could be said to be dangerous within the meaning of § 3575(f), as required by § 3575(a). And the government has not yet complied with our order of January 2, 1973 which required it to "file a statement of the evidence it intends to adduce in order to support a finding of dangerousness, as required by § 3575(f) of Title 18, United States Code."

Rather than agreeing with the Court's statement in our order of January 2, 1973 that there must be an adequate factual basis for a finding that a particular defendant is "dangerous," within the meaning of § 3575(f), the government really contends that such a finding may be made without any factual base other than one which would support a finding that a particular defendant may, in fact, be said to be a "special offender" within the meaning of § 3575(e)(3).

The notion that both the elements spelled out separately in § 3575(e) and in § 3575(f) may be established by factual circumstances which would sustain only a finding that a particular defendant may be said to be a "special offender" within the meaning of § 3575(e) is inconsistent with the whole pattern of the new sentencing procedures provided in §§ 3575–3578. Section 3575(b), for example, requires the Court to "place in the record its findings, including an identification of the information relied upon in making such findings and its reasons for the sentence imposed."

Section 3576, providing for the first experiment with appellate review of sentences in the federal system, would be meaningless if a district court purported to make findings which would not be based upon any factual data whatever. For § 3576 provides that the appellate

"[r]eview of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused."

It was and is difficult, particularly in light of the Congressional history which makes repeated reference to Minnesota v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940), and to Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), for this Court to understand how any finding based upon no evidence at all—or one not even based upon "information," as apparently contemplated by § 3575 (b)—could be viewed as anything other than "clearly erroneous" by an appellate court.

The government's representation that it agrees with this Court's January 2, 1973 statement that the government must establish (a) that a particular defendant is in fact a "special offender" within one of the criteria set forth in § 3575(e); and (b), that the same particular defendant is in fact "dangerous," as defined in § 3575(f), before such a defendant may properly be given an enhanced sentence is negated by its insistence that it need not, under the circumstances of this case, adduce any evidence other than proof that a particular defendant is a "special offender" within the definition of § 3575(e)(3) to support the required finding that such defendant is in fact "dangerous" as defined in § 3575(f).

The government argues on page 3 of its response that "Congress found that any one of three of sets of characteristics of an offender's past conduct demonstrate the likelihood that a lengthened term of incapacitation of that offender will be required for the public's protection." Pages 87–88 of the Senate Report is cited to support that argument. The notion that the Senate Report's discussion of the "habitual offender" criteria as defined in § 3575(e)(1) on pages 87–88 of that Report supports the government's argument is untenable.

The Senate Report pointed out on those pages the fundamental defect revealed in State recidivist laws and noted that title X had been carefully designed to avoid casting too wide a net.

The Report put its finger on the defect in State laws by stating that "the State recidivist laws ordinarily have not included a requirement that the defendant be dangerous." It added that because the States had failed to recognize that "not every recidivist is likely to repeat unless given an extended term," S.30 had focused upon the separate and additional element of "dangerousness," because "it is dangerousness, usually, which justifies a longer term" (Id. at 88). The last paragraph of the discussion on page 88 stated:

Title X's habitual offender provisions are designed to avoid the pitfalls of the State laws. Its provisions focus specifically on those felons whose prior convictions make them likely to repeat, since they apply only to a defendant who has had at least two serious prior convictions and at least one prior imprisonment, *and who is found to be dangerous*. They create no new mandatory minimum sentences, and they permit parole. The authority they confer can be expected to be used, and used effectively, in part because they are drawn so as to prevent abuse of that authority. [Emphasis ours.]

The requirement that one who may be found to meet the criteria spelled out in § 3575(e)(1) must *also* be found "to be dangerous" is an obvious reference to the requirement of § 3575(f).

The government argues on page 6 of its response that if it is established that a particular defendant falls within the specific criteria set forth in subsection (e)(3), no additional evidence that these defendants are dangerous offenders will be required. The government attempts to represent that Congress "explicitly recognized" that the separate element of "dangerousness" may be "established through proof of the elements of subsec-

tion (e)(3)." A single sentence from page 166 of the Senate Report is cited to support that representation. The sentence quoted said: " 'Dangerousness' may be inferred, although not necessarily, from the establishment of the requirements of subsection (e)."

Senator McClellan, who undoubtedly knew more about S.30 than any member of the Senate, has given that sentence particularized attention. In his Notre Dame Lawyer article, which was specifically designed to answer criticism leveled at S.30 by the American Civil Liberties Union, by the Association of the Bar of New York City, and others pointed out that the assumption made by the ABCNYR that the sentence quoted by the government to support its argument in this case did *not*, "as the city bar committee's report implies that it does, eliminate 'dangerousness' as a separate element, *in addition to* the element that a defendant be a "special offender," which is required to be shown *before* special sentencing is authorized." (Emphasis ours).

Senator McClellan apparently made clear to everyone except the government in this case that "It is more apparent that . . . the statement in the committee report [referring to the single sentence quoted by the government from page 166 of the Senate Report] does *not* eliminate dangerousness *as an independent requirement,* when the statement is quoted in full, rather than quoted out of context, . . . (Id. p. 158).

Senator McClellan's rejection of the improper use of the single sentence from page 166 of the Senate Report by the Association of the Bar of the City of New York's committee was consistent with what Senator McClellan stated elsewhere in the Notre Dame Lawyer article and with statement after statement in the Congressional history of the function of the Congress intended Section 3575(f) to serve.

In discussing a complaint made by the ACLU in regard to S.30's definition of "dangerousness," Senator McClellan

stated that the "definitions in title X have been so amended that they are new, as a group, more specific and narrow than those in the Model Sentencing Act. . . . Actually that definition [of "dangerousness"] now closely follows, or even exceeds in specificity, not only the Model Sentencing Act and the ABA Standards, but also the Model Penal Code and the Minnesota recidivist law" (Id. p. 158).

On Page 162 of his Notre Dame Lawyer article, Senator McClellan stated that "It is the definitions of "dangerous special offender" which appropriately limit the scope of title X . . ." In numerous other places he pointed out that "title X's definition of the term 'dangerous' was framed in its present language largely in response to prior suggestions made by the ACLU" (Id. p. 157); that such definition was "unusually specific and clear for sentencing standards" (Id. p. 158); that a defendant who may be found to be recidivist within the meaning of § 3575(e)(1) is nevertheless "protected from severe sentencing [by the requirement of § 3575 (f)] that the court find at the time of sentencing that the defendant is especially 'dangerous,' in the sense that a period of confinement longer than that ordinarily provided is required for the protection of the public from further criminal conduct by the defendant" (Id. at p. 150); and that "the establishment of a pattern [of conduct within the meaning of § 3575(e)(2)] is only one of a number of elements which must be satisfied before the possibility of a thirty-year sentence is triggered, *such as the requirement that the defendant be 'dangerous'* . . ." (Id. at 154). Senator McClellan forcefully added that "the bar committee's statement that a thirty-year term can be triggered by two isolated offenses and nothing more is plainly incorrect and inflammatory."

Rather than deal with the carefully drawn and precise definitions of the two elements set forth in § 3575(e) and § 3575(f), respectively, the government presents this Court with loose talk in

which it describes the defendants as "organized crime offenders." On page 5 of its response, for example, it is stated that the "government submits that as an initial matter it is clear that enhanced sentences are called for by § 3575 because these defendants are without any doubt *organized crime offenders,* within the meaning of the statute." See also the government's statement on page 8 in which it is suggested that it would be "unrealistic" to require the government to prove anything except "that the offender is in fact an *organized crime offender."*

Neither §§ 3575–3578, nor any other federal statute with which we are familiar ever attempted to define an "organized crime offender." Indeed, it is perfectly clear that the Congress carefully avoided any such attempt in its enactment of §§ 3575–3578. Those statutes were enacted to apply to every defendant convicted of a felony offense against the laws of the United States and were not, as other titles in Public Law 91–452, specifically directed toward "organized crime."

Senator McClellan stated in his Notre Dame Lawyer article that "organized crime" is not "a precise and operative legal concept, like murder, rape, or robbery." He stated that use of those words is simply "a shorthand method of referring to a large and varying group of criminal offenses committed in diverse circumstances." (Id. at p. 61). Senator McClellan made perfectly clear that "title X, in short, will not cover any defendant, *a member of the La Cosa Nostra or otherwise,* unless he is guilty of committing a felony [and] *he is found to be 'dangerous'* . . . ." (Id. at 159). Such a view is consistent, indeed, it is the only view which is consistent with Senator McClellan's earlier statement in the same article that "the Constitution applies to those engaged in organized crime, just as it applies to those engaged in white-collar or street crime" *(Id.* at 62).

Former Assistant Attorney General Will Wilson published an article entitled "The Threat of Organized Crime: Highlighting the Challenging New Frontiers in Criminal Law," in the same issue of the Notre Dame Lawyer which published Senator McClellan's article. That article was "the product of staff work by the Department of Justice and especially the research of Gary Cornwell," who happens to be one of the counsel for the government in this case. That article made clear that the views expressed by the Department of Justice in 1970 were, at least at that time, consistent with the views stated by Senator McClellan, which we have just quoted. In regard to the applicability of title X of S.30 to convicted offenders, Mr. Wilson stated that "Organized crime, by any of its names, is *not* . . . the test for segregation, for . . . those terms are not sufficiently precise to serve as judicially manageable standards" (Id p. 50). He added that "the differentiation is made on the basis of specific conduct, *spelled out in advance,* for which special treatment is rationally justified" (Emphasis ours). (Id. p. 50). Rather than using the loose catchphrase "organized crime offenders," which the government used so frequently in its response in this case, the former Assistant Attorney General carefully and accurately stated that "title X increases the discretionary powers of the trial judge in setting the sentence of defendants *who have in the past* shown themselves to be *dangerous criminal offenders"* (Emphasis ours) (Id p. 52).

The notion that the government can proceed upon the theory that "organized crime offenders pose a special threat to the public" (Govt's Response, p. 10) and that it may ignore the Congressional command that it must include in its notice and thereafter establish both that a particular defendant is a "special offender" within the meaning of one of the three categories of § 3575(e), and is also "dangerous" within the meaning of § 3575(f), is totally without support and is directly contrary to the legislative history of the applicable statute.

## V.

The government purported to comply with our order of January 2, 1973, to file "a statement of the evidence it intends to adduce in support of a finding of dangerousness, as required by § 3575 (f)," by making various and sundry charges against the various defendants, some of which it would attempt to support by hearsay upon hearsay and some of which relate to criminal charges which pend trial in the State courts of Oklahoma. We do not believe it is appropriate to discuss those charges or the manner in which the goverment apparently believes it can proceed for the reason that we are convinced that the problem of the validity of the § 3575 notice and the validity of the government's view concerning § 3575(f) must be first determined before we reach the other questions presented by the government's anticipated "organized crime" data.

Although not requested, and contrary to the established practice of this Division of this Court, as we recently were required to state in another Strike Force case, the government has made suggestions in regard to the particular sentences it believes should be imposed. It also directed our attention to sentences imposed in seven relatively recent cases in this District and the District of Kansas. It is unnecessary that we consider or comment on that incomplete data, until we determine whether a sentence pursuant to § 3575(b) may properly be imposed in regard to any of the defendants involved in the pending case.

In light of the fact that Congress again has under consideration the new system of sentencing introduced for the first time in the federal system by §§ 3575–3578, this Court must exhaust every resource to make certain that the procedures followed in this (almost) first case in which the government has elected to use that legislation are consistent with the Congressional intent reflected by the statutes and their legislative history. It is obvious that the hopes of the Senate Report stated on page 88 that "the authority they [§§ 3575–3578] confer can be expected to be used, and used effectively" have not been realized. It would, in our judgment, be most unfortunate if the intent of provisions "drawn so as to prevent abuse of that authority" would prove to be ineffective.

Accordingly, and for the reasons stated, it is

ORDERED that within fifteen (15) days the government shall file copies of all past and existing policy guidelines, together with all amendments which may have from time to time been made, promulgated by the Department of Justic, as those policy guidelines relate to the utilization of §§ 3575–3578. In the event the government concludes and states that such notice does not presently comply with the requirements of § 3575 (a), its statement shall indicate whether the government will seek leave to amend said notice. In the event the government's statement indicates that leave to amend will be sought, the government shall (a) set forth with particularity the amendments it may propose it would make and (b) state the reasons why the present notice should be subject to amendment at the present time. It is further

ORDERED that, in light of the government's failure directly to respond to our order of January 2, 1973, the government is again afforded the opportunity within fifteen (15) days to prepare, serve, and file a statement of the evidence it intends to adduce in order to support a finding of dangerousness, as required by § 3575(f) at Title 18, United States Code.

In the event the government believes that its response filed January 23, 1973 adequately complied with our order of January 2, 1973, it shall so state and, in that event, no further response would be required.