UNITED STATES of America,
Appellee,

v.

Theodore W. KELLY, Appellant.

Nos. 74–1961 and 74–1962.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1975.

Decided July 14, 1975.

Thomas M. Bradshaw, Asst. Fed. Public Defender, Kansas City, Mo., for Theodore W. Kelly.

Robert G. Ulrich, Asst. U. S. Atty., Kansas City, Mo., for United States of America.

Before LAY and HENLEY, Circuit Judges, and REGAN, District Judge.*

LAY, Circuit Judge.

This case presents two issues: (1) whether a felon who steals a firearm may be convicted of "receiving" a firearm under 18 U.S.C. App. § 1202(a)(1), and (2) whether the district court properly refused to invoke the Dangerous Special Offenders Act, 18 U.S.C. § 3575, for failure of the government to give adequate notice. We answer both in the affirmative and affirm.

On November 4, 1972, defendant was wanted for questioning by the police in Kansas City, Missouri. When he was stopped, he was searched and a .357 caliber revolver was found in his clothing. At that time he was arrested and charged by state authorities with carrying a concealed weapon. Some two years later, on February 3, 1974, he was again arrested in Kansas City, this time for questioning in connection with the death of his common law wife. On this occasion he was in possession of a .38 caliber revolver. On April 4, 1974, he was indicted by a federal grand jury on two counts of violating 18 U.S.C. App. § 1202(a)(1).[1] He was eventually convicted and sentenced to two consecutive two-year prison terms.

▆ At his trial, Kelly admitted possession of the firearms and filed a stipu-lation stating that he had acquired both by theft in the Kansas City area. By his stipulation, the defendant hoped to benefit from the differing burdens of proof established by the Supreme Court in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

In *Bass,* the Court held that for possession of a firearm by a felon to violate § 1202(a)(1), it must be proven that the weapon was either in interstate commerce at the time or that it had a direct effect upon it. The Court also observed:

Significantly broader in reach, however, is the offense of *"receiv[ing]* . . . in commerce or affecting commerce,"* for we conclude that the government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce. (Emphasis added.)

404 U.S. at 350, 92 S.Ct. at 524.

In the present case the government proved that both weapons had at one time traveled in interstate commerce and the burden established in *Bass* for a receiving charge was clearly met. It could not, however, have sustained a possession charge by the proof offered. Defendant urges that receiving under § 1202(a) requires a willing transfer by one party and a willing acceptance by the other and therefore a person who steals a firearm can only be prosecuted for possession. He contends the government is simply seeking to lighten its burden of proof by charging receiving rather than possession,[2] and that to allow a receiving

---

* The Honorable John K. Regan, United States District Judge, Eastern District of Missouri, sitting by designation.

1. Title 18 U.S.C. App. § 1202(a) provides:
   (a) Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or
   (2) has been discharged from the Armed Forces under dishonorable conditions, or
   (3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or
   (4) having been a citizen of the United States has renounced his citizenship, or

   (5) being an alien is illegally or unlawfully in the United States,
   and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

2. This contention is not new. In *United States v. Walker,* 489 F.2d 1353 (7th Cir. 1973), *cert. denied,* 415 U.S. 982, 94 S.Ct. 1574, 39 L.Ed.2d 879 (1974), Judge Campbell notes in his concurrence:

   It is difficult to conceive of an instance in which a person charged with possession of a firearm may not also be charged with receiving it. And if all the Government need dem-

charge in this case would be to permit the government to treat receiving and possession under § 1202(a) as synonymous, contrary to the decision in *Bass* that these are separate crimes. We disagree.

Although the legislative history is not detailed, it is readily apparent from it that the overall purpose of 18 U.S.C. App. § 1202(a) was to prevent certain classes of persons, among them convicted felons, from "acquiring" firearms.[3] "Acquire," of course, does not imply a two-party transaction[4] and neither, do we believe, does the term "receives" as used in the statute. Accordingly, we hold that a felon who acquires a weapon by theft, receives that weapon within the meaning of § 1202(a).

This court, it should be noted, has given tacit approval to the fact that § 1202(a) encompasses a theft. In *United States v. Lupino,* 480 F.2d 720 (8th Cir.), *cert. denied,* 414 U.S. 924, 94 S.Ct.

257, 38 L.Ed.2d 159 (1973), two defendants were charged with conspiring to receive a weapon. They argued that they could not be convicted of conspiracy on that charge because it necessarily required two persons to commit. Then Chief Judge Matthes said:

First, we are not inclined to hold that the substantive offense of receiving a firearm prohibited by § 1202(a) is of such a nature as to *necessarily* require the participation of two persons for its commission. Conceivably a felon acting alone could receive a firearm. *See, e. g., United States v. Giannoni,* 472 F.2d 136 (9th Cir. 1973).

In *Giannoni,* the defendant was convicted of receiving on the basis of a theft from a pawnshop.

■ Defendant's contention that possession and receiving have been merged to form one crime thus allowing the government to obviate its greater bur-

---

onstrate is that the "firearm received has previously traveled in interstate commerce", § 1202(a) effectively proscribes virtually all acts involving possession or receipt of firearms by a person previously convicted of a felony. If the defendant is charged with having received the weapon in any state other than the state wherein it was manufactured, the firearm will necessarily have previously traveled in interstate commerce.

The fortuitous circumstances which would have to exist to render § 1202(a)(1) inapplicable are so unlikely that, in practice, the statute "renders traditionally local criminal conduct a matter of federal enforcement", a change in the "federal-state balance" which Justice Marshall had indicated would not be recognized "absent a clearer statement of intention from Congress".

*Id.* at 1359.

3. What legislative history there is was compiled and printed as an appendix to *Stevens v. United States,* 440 F.2d 144, 152–66 (6th Cir. 1971). Senator Long, the statute's sponsor, consistently used the word "acquire" as if synonymous with the word "receive." He observed:

A lot of people have objected to the Dodd gun bill on the theory it would make it difficult for honorable people—who have a right to have weapons for the defense of their homes to *acquire* weapons—and would make it somewhat cumbersome and burdensome for people to cross State boundaries

seeking an opportunity to hunt or engage in other sports activities, as they have historically done in this country.

\* \* \* \* \* \*

It would be a bother to them, and it would not really prevent what it seeks to prevent in that it would not have, for example prevented Oswald from *acquiring* the weapon with which he killed John Kennedy. And it would not have kept the assassin of Martin Luther King from *acquiring* the weapon he used for that dastardly act.

\* \* \* \* \* \*

The killer of Medgar Evers, the murderer of the three civil rights workers in Mississippi, the defendants who shot Captain Lemuel Penn (on a highway while he was driving back to Washington after completion of reserve Military duty) would all be free under present Federal law to *acquire* another gun and repeat those same sorts of crimes in the future.

The assassin of George Lincoln Rockwell and the murderer of Malcolm X could lawfully *acquire* a gun upon their release from prison and kill again.

*Id.* (Emphasis added.)

4. Webster's defines "acquire" simply as "to come into possession, control or power of disposal of often by some uncertain or unspecified means." Webster's New International Dictionary (3d ed. 1966).

den of proof concerning interstate commerce under a possession count likewise fails analysis. Under a receiving charge, the government assumes the additional burden of proving the receipt of the firearm occurred in the district where the prosecution takes place. *United States v. Haley,* 500 F.2d 302, 304–05 (8th Cir. 1974). *Cf. United States v. Overshon,* 494 F.2d 894, 899–900 (8th Cir.), *cert. denied,* 419 U.S. 853, 878, 95 S.Ct. 96, 142 42 L.Ed.2d 85, 118 (1974). Venue is a fact which must always be established at trial. There are also several instances when a felon could possess a weapon without the possibility of being subject to a charge of receiving it. A felon could for example have received a gun

before he was convicted of a felony or he could have received it beyond the statute of limitations for the receiving offense and yet still be in possession.[5]

In this instance, the government sustained its burden of proof (1) that the defendant was a convicted felon at the times he received the weapons; (2) that he received them in the Western District of Missouri; and (3) that the guns had previously been transported in interstate commerce.

■ We turn now to the government's appeal, No. 74–1962, concerning the refusal of the district court to invoke 18 U.S.C. § 3575 and find the defendant to be a dangerous special offender.[6]

---

5. The requirement of proof of a present nexus with interstate commerce for the crime of possession under § 1202(a) is premised on congressional intent to avoid duplication of enforcement effort between state and federal authorities. True, the government's burden is not as great when there is a receiving charge, but there still exists a burden of showing some connection with interstate commerce, thus separating federal and state jurisdiction. Under these circumstances, duplicitous charges will often be avoided. *But see United States v. Ackerson,* 502 F.2d 300 (8th Cir. 1974), vacated, 419 U.S. 1099, 95 S.Ct. 769, 42 L.Ed.2d 796 (1975).

6. Title 18 U.S.C. § 3575 provides in pertinent part:

(a) Whenever an attorney charged with the prosecution of a defendant in a court of the United States for an alleged felony committed when the defendant was over the age of twenty-one years has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. . . .

\* \* \* \* \* \*

(e) A defendant is a special offender for purposes of this section if—

(1) the defendant has previously been convicted in courts of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of

the United States, any political subdivision, or any department, agency, or instrumentality thereof for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year under applicable laws of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency or instrumentality thereof; or

(2) the defendant committed such felony as part of a pattern of conduct which was criminal under applicable laws of any jurisdiction, which constituted a substantial source of his income, and in which he manifested special skill or expertise; or

(3) such felony was, or the defendant committed such felony in furtherance of a conspiracy with three or more other persons to engage in a pattern of conduct criminal under applicable laws of any jurisdiction, and the defendant did, or agreed that he would, initiate, organize, plan, finance, direct, manage, or supervise all or part of such conspiracy or conduct, or give or receive a bribe or use force as all or part of such conduct. . . .

\* \* \* \* \* \*

(f) A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is

The notice filed by the United States Attorney stated the reasons for invoking § 3575 as follows:

> The defendant is a special offender for the purposes of 18 United States Code, Section 3575 and within the meaning of 18 United States Code, Section 3575(e), having been convicted in Courts of the State of Missouri of two felonies, the first felony conviction for stealing from the person on September 23, 1963, in the Circuit Court of Jackson County, and sentenced to two years confinement; and the second felony conviction for robbery in the first degree occurring in the Circuit Court of the State of Missouri for the City of St. Louis, on the 7th day of July, 1969, and sentenced to eight years confinement. The defendant was confined in the Missouri State Prison, Jefferson City, Missouri, as a result of both convictions and was released from the Missouri State Penitentiary on the second felony conviction on or about the 17th day of August, 1972, within five years from the dates of the commission of the offenses charged in the above-styled cause.

> The defendant is dangerous within the meaning of Title 18, United States Code, Section 3575(f) requiring that a period of confinement longer than that provided for the offense for which he was convicted, Title 18—Appendix, United States Code, Section 1202(a)(1), to protect the public from further criminal conduct by said defendant.

The government contends the above notice was sufficient in itself to show why the defendant should be considered dangerous. It argues that, as a notice, it need only be a plain, concise and definite statement of the government's intended action.

Judicial interpretation of the notice requirement of § 3575 is minimal. To date the only district judges who have considered it in reported opinions are in the Western District of Missouri. Judge Hunter in this case, *United States v. Kelly,* 384 F.Supp. 1394 (W.D.Mo.1974), and Judge Oliver in *United States v. Duardi,* 384 F.Supp. 874 (W.D.Mo.1974).[7] *Duardi* was appealed to this court by the government on the precise issue presented here, but was dismissed for lack of jurisdiction since the court had not yet pronounced final sentence. *See United States v. Duardi,* 514 F.2d 545 (8th Cir. 1975).

Judge Oliver's opinion in *United States v. Duardi,* 384 F.Supp. 861 (W.D. Mo.1973), is representative of the approach taken by both courts. He quoted those portions of the legislative history which emphasized the need to determine "dangerousness" and concluded:

> The notion that the government can proceed upon the theory that "organized crime offenders pose a special threat to the public" (Govt's Response, p. 10) and that it may ignore the Congressional command that it must include in its notice and thereafter establish both that a particular defendant is a "special offender" within the meaning of one of the three categories of § 3575(e), and is also "dangerous" within the meaning of § 3575(f), is totally without support and is directly contrary to the legislative history of the applicable statute. 384 F.Supp. at 869.

We find the plain language of the act itself defeats the government's argu-

required for the protection of the public from further criminal conduct by the defendant.

7. In the only other case to date in which the government attempted to obtain a sentence under § 3575, the court dismissed because the government did not file its motion until after sentencing on the main charge. In doing so, the court observed: "The short of it is that Section 3575 must be strictly construed and strictly adhered to by the Government . . ." *United States v. Edwards,* 379 F.Supp. 617, 621 (M.D.Fla.1974).

**256**

ment. Under the act a notice is required "(1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender." (Emphasis added.)

In the early decision of *United States v. Standard Brewery,* 251 U.S. 210, 40 S.Ct. 139, 64 L.Ed. 229 (1920), the Court observed:

> Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed. If that be plain, it is the duty of the courts to enforce the law as written, provided it be within the constitutional authority of the legislative body which passed it.

*Id.* at 217, 40 S.Ct. at 140.

If that wording is plain and simple and straightforward, the words employed must be accorded their normal meaning. As the Court said in *Helvering v. Hammel,* 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303 (1941):

> True, courts in the interpretation of a statute have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results, *United States v. Katz,* 271 U.S. 354, 362 [46 S.Ct. 513, 516, 70 L.Ed. 986], or would thwart the obvious purpose of the statute, *Haggar Co. v. Helvering,* 308 U.S. 389 [60 S.Ct. 337, 84 L.Ed. 340]. *But courts are not free to reject that meaning where no such consequences follow and where, as here, it appears to be consonant with the purposes of the Act as declared by Congress and plainly disclosed by its structure.*

*Id.* at 510–511, 61 S.Ct. at 371. (Emphasis added.)

■ In sum it is not for the court to say, where the language of the statute is clear, that a legislative act may encompass a more restricted meaning. We be-

lieve the district court correctly found the notice insufficient. Under the circumstances we need not meet the more serious challenge to the act's constitutionality. The cross appeal by the government is dismissed and the judgment of conviction is affirmed.