562 F.2d 532
 77-2 USTC P 9638
 T. L. HUNT, INC. OF TEXAS, Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
CHESTER PATTERSON, INC., Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
HUNT DRY GOODS CO., INC., Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
HUNT'S GRAND PLAZA, INC., Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
HUNT'S OF PHOENIX VILLAGE, INC., Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
 Nos. 76-1894 to 76-1898.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1977.
Decided Sept. 14, 1977.
 
 Stanley S. Shaw, Jr., Tax Div., Dept. of Justice (argued), Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, William A. Friedlander, Washington, D. C., on brief, for appellant.
 E. J. Ball, Fayetteville, Ark., for appellee.
 Before VAN OOSTERHOUT, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.
 VAN OOSTERHOUT, Senior Circuit Judge.
 
 
 1
 The controlling issue presented by these appeals from the decision of the Tax Court[1] in these five consolidated cases is whether the Tax Court erred in determining that Section 1.1563-1(a)(3), Income Tax Regulations, is invalid on the basis that the regulation is inconsistent with 26 U.S.C. § 1563(a)(2).
 
 
 2
 The taxpayers in this case are five corporations, each of which is owned by T. L. Hunt, his relatives and associates, or by Hunt Dry Goods Co., Inc., in which Hunt and his wife own a controlling interest. The Commissioner determined that each of the taxpayers was a member of one of three "brother-sister groups" within the meaning of 26 U.S.C. § 1563(a)(2). As a result the Commissioner disallowed the $25,000 surtax exemption each taxpayer had used for the years 1973 and 1974 and instead allocated to each taxpayer a pro rata share of the single surtax exemption, which pursuant to 26 U.S.C. § 1561 was all that was allowable to each of the three groups, and assessed the resulting deficiency in income tax payments.
 
 
 3
 The taxpayers in this case are five corporations, all of which are closely held by a small number of persons. The stipulated percentage of stock ownership owned by each member of the three groups is as follows:
 
 
 4
 GROUP I
 PERCENTAGE OF STOCK OWNED
 -------------------------
 80% Test 50% Test
 (Sec. 1563(a)(2)(A)) (Sec. 1563(a)(2)(B))
 --------------------------- --------------------
 Hunt Dry Hunt's T.L. Hunt
 Goods, Grand Inc. of
 Inc. Plaza Texas
 -------- ------ ---------
T. L. Hunt 51.70 45.67 66.67 45.67
Linda Cravens 15.52 29.33 11.11 11.11
Sara Hauert 10.11 -0- 11.11 -0-
R. T. Gregg -0- 8.33 -0- -0-
R. T. Hunt 13.93 -0- -0- -0-
 ----- ----- ----- -----
 TOTAL 91.26 83.33 88.89 56.78
 ----- ----- ----- -----
 GROUP II
 PERCENTAGE OF STOCK OWNED
 -------------------------
 80% Test 50% Test
 (Sec. 1563(a)(2)(A)) (Sec. 1563(a)(2)(B))
 ------------------------------- --------------------
 Hunt's Village Chester
 Store, Inc. Patterson, Inc.
 -------------- ---------------
T. L. Hunt 37.086 40.843 37.086
Byron Cravens 16.248 14.559 14.559
Samuel Hauert 14.702 7.985 7.985
Phil Deal 14.285 -0- -0-
Mae Patterson -0- 21.000 -0-
 ------ ------ ------
 TOTAL 82.321 84.387 59.630
 ------ ------ ------
 GROUP III
 PERCENTAGE OF STOCK OWNED
 -------------------------
 80% Test 50% Test
 (Sec. 1563(a)(2)(A)) (Sec. 1563(a)(2)(B))
 --------------------------- --------------------
 Hunt's of Hunt's of
 Phoenix Village Pocahontas
 --------------- ----------
T. L. Hunt 12.925 12.925 12.925
Byron Cravens 28.879 28.879 28.879
Samuel Hauert 12.527 27.527 12.527
C. E. Higgins 20.000 25.000 20.000
Kenneth Taylor 10.000 -0- -0-
 ------ ------ ------
 TOTAL 84.331 94.331 74.331
 ------ ------ ------
 
 
 5
 The Tax Court held that the stock interests of any shareholder who owned no stock in one or more corporate members of the group could not be counted for the purpose of meeting the 80% test of § 1563(a)(2)(A). Accordingly, the court held that the 80% test had not been met in any instance and decision was entered for the taxpayers. In so doing, the Tax Court followed the majority opinion in Fairfax Auto Parts of Northern Virginia, Inc., v. Commissioner of Internal Revenue, 65 T.C. 798 (1976). The Tax Court's decision in Fairfax was reversed by the Fourth Circuit subsequent to the filing of the decision in the present case. Fairfax Auto Parts of Northern Virginia, Inc., v. Commissioner of Internal Revenue, 548 F.2d 501 (4th Cir. 1977).
 
 
 6
 The controlling statute, 26 U.S.C. § 1563, in pertinent part reads:
 
 
 7
 Sec. 1563. DEFINITIONS AND SPECIAL RULES.
 
 
 8
 (a) CONTROLLED GROUP OF CORPORATIONS. For purposes of this part, the term "controlled group of corporations" means any group of
 
 
 9
 * * *NTR
 
 
 10
 (2) BROTHER-SISTER CONTROLLED GROUP. Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing
 
 
 11
 (A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and
 
 
 12
 (B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.
 
 
 13
 Section 1.1563-1(a)(3), Income Tax Regulations, defines a brother-sister controlled group as two or more corporations if:
 
 
 14
 the same five or fewer persons * * * own * * * singly or in combination, stock possessing
 
 
 15
 (a) At least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation; and
 
 
 16
 (b) More than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.
 
 
 17
 The majority and minority opinions in Fairfax and the parties are in agreement that both the 80% test and the 50% test of § 1563 must be met, and also are in agreement that the 50% test of § 1563(a)(2)(B) has been met. In Fairfax the Tax Court majority concedes that the case before it falls within the definition and the example set out in the regulation just quoted. Similarly, the facts here fall within the definition, particularly in view of the words "singly or in combination" used in the regulation.
 
 
 18
 The Fourth Circuit in reversing the Tax Court in Fairfax states:
 
 
 19
 A majority of the Tax Court held that "one must own stock in each corporation before his stock can be taken into account for purposes of the 80 percent test." Accordingly, it invalidated the regulation upon which the Commissioner had relied in assessing the deficiency.
 
 
 20
 The dissenting members of the court concluded that "stock owned by any or all of the five persons may be taken into consideration in determining whether the 80-percent test has been satisfied. . . ." Under this interpretation, the deficiency was lawfully assessed.
 
 
 21
 The majority and the dissenting opinions fully set out the arguments supporting both interpretations of the statute, and there is no need to repeat them here. We conclude that the dissent's interpretation of the statute accords with the text of the statute and its legislative history. Accordingly, for the reasons set forth in the dissenting opinion, we reverse the Tax Court, uphold the validity of the regulation, and remand the case for entry of judgment in favor of the Commissioner. (Footnote omitted.) 548 F.2d at 502-03.
 
 
 22
 We agree with the view of the Fourth Circuit that the excellent dissenting opinion of the Tax Court in Fairfax clearly establishes that 26 U.S.C. § 1563(a)(2)(A) makes no requirement with respect to the 80% test that each of the five or fewer stockholders own stock in the controlled corporations as a prerequisite to counting his stock in making up the 80% requirement. As stated by the Fairfax majority, § 1563(a)(2)(A) is a financial interest test, while § 1563(a)(2)(B) is a control test.
 
 
 23
 Section 1563(a)(2)(B) relating to the 50% test specifically contains a provision reading: "taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation." Such language or its equivalent is not contained in § 1563(a)(2)(A). Thus it is apparent that Congress was aware of the language necessary to require that each person whose holdings are considered in applying the 80% test must own stock in each of the controlled corporations. We find nothing in the plain words of the statute which warrants applying such standard with respect to the § 1563(a)(2)(A) test.
 
 
 24
 The holding of the Tax Court in this case constitutes an unwarranted addition to the statute of a requirement not reflected in the plain terms and language of the statute. As we stated in United States v. Kelly, 519 F.2d 251, 256 (8th Cir. 1975), citing supporting authorities: "If that wording is plain and simple and straightforward, the words employed must be accorded their normal meaning."
 
 
 25
 We join the Fourth Circuit in holding that the Fairfax dissent accords with the text of the statute and its legislative history.
 
 
 26
 If contrary to what we have just held, the statute could be considered ambiguous, we hold for the reasons set out in the Fairfax dissent that the legislative history does not support the view of the Tax Court majority.
 
 
 27
 It reasonably follows that § 1.1563(a)(3), Income Tax Regulations, is not inconsistent with the statute and is not unreasonable for the reasons pointed out in the Fairfax dissent.
 
 
 28
 The Fairfax dissent, citing strong supporting authorities, correctly holds that the contemporaneous construction of a statute by those charged with its administration is entitled to great respect and should be held invalid only if the regulations are unreasonable and inconsistent with the statute. We hold that the regulation here under attack is not unreasonable and is not inconsistent with the applicable statute.[2]
 
 
 29
 We reverse the Tax Court, uphold the validity of the regulation, and remand the case for entry of judgment in favor of the Commissioner.
 
 
 30
 Reversed.
 
 
 31
 WEBSTER, Circuit Judge, dissenting.
 
 
 32
 I respectfully dissent. In my view, Reg. § 1.1563-1(a)(3) effectively nullifies the 80 per cent ownership test of 26 U.S.C. § 1563 and is an extension, rather than an explanation or implementation, of the statute. This invalid regulation penalizes closely held corporations in a way never intended by Congress.
 
 
 33
 As originally enacted in 1964, § 1563 defined a controlled group as two or more corporations in which any one person controlled at least 80 per cent of the total combined voting power or 80 per cent of the total combined value of the shares. 78 Stat. 116. The test was expanded by the Tax Reform Act of 1969, 83 Stat. 487, 602, to include "the combined stock ownership of five individuals, rather than one individual, in applying the 80 percent test." Hearings on the Subject of Tax Reform Before the House Committee on Ways and Means, 91st Cong., 1st Sess. 5394 (1969). The 50 per cent test was added at the same time.
 
 
 34
 In my view, the only reasonable construction of § 1563(a)(2), as amended, is that both the 80 per cent (financial interest) test and the 50 per cent (control) test are applied to the same group of five or fewer persons. Thus, a brother-sister controlled group is defined as "two or more corporations if five or fewer persons * * * own stock possessing (A) at least 80 per cent of * * * each corporation, and (B) more than 50 per cent of * * * each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation." (Emphasis supplied). As Judge Sterrett properly pointed out for the majority in Fairfax Auto Parts of Northern Virginia, Inc. v. Commissioner, 65 T.C. 798, 803 (1976), "each such person" could only refer to the same "five or fewer persons" who also own at least 80 per cent of each corporation.
 
 
 35
 This construction is fortified by the general explanation contained in the Hearings on the Subject of Tax Reform Before the House Committee on Ways and Means, supra, which explains that the 50 per cent test was added to insure that "this expanded definition of brother-sister controlled group applies only to those cases where the five or fewer individuals hold their 80 percent in a way which allows them to operate the corporations as one economic entity * * *." (Emphasis added). Both the statute and its official explanation speak only of one group of five or fewer persons; it does not expressly or by implication bring within the definition of brother-sister corporations (controlled group) two or more corporations that are not controlled by the same group of five or fewer persons.
 
 
 36
 The majority opinion draws significance from the fact that in applying the 50 per cent test only the stock of a particular person owned in identical amount in each corporation is considered, whereas the 80 per cent test is not so qualified. The 50 per cent test is, as the majority opinion notes, a test of control. The use of identical interests for purposes of this test is to identify the degree of control necessary to allow the corporations "to operate * * * as one economic entity." The 80 per cent test, on the other hand, is one of financial interest. To me, it makes little sense to depart from the language and purpose of this statute by permitting the financial interest test to be satisfied by a different group of five or fewer persons for each one of the companies within the controlled group. Such a construction renders meaningless the additional 80 per cent test. "If control (more than 50 per cent ownership) is in a few persons, what is added by a requirement that an additional 30 per cent be owned by someone else? The presence of the 80 per cent test only makes sense when viewed as a test of substantial financial interest by the persons in control of the corporations. In other words, the statute requires that five or fewer persons have common control of two or more corporations and that those same five or fewer persons have at least an 80 per cent financial interest in each corporation."[1]
 
 
 37
 The undisputed purpose of § 1563 was to prevent persons from using the device of multiple controlled corporations to achieve an unwarranted tax benefit wholly unrelated to the business of the enterprises involved. There is nothing in the legislative history to suggest that Congress intended to penalize companies in which there were five or fewer shareholders. It is not the smallness of the number of persons in each company that triggers § 1563; it is the sameness of that small number. The 80 per cent financial interest requirement is meaningless unless it is the same group of five or fewer persons that own 80 per cent of each company within the controlled group. It is this requirement of "economic entity" which is entirely eviscerated by Reg. § 1-1563-1(a)(3).
 
 
 38
 Because I conclude that Reg. § 1.1563-1(a)(3) is an unwarranted extension of the statute and therefore invalid, I conclude with the majority of the Tax Court that it should not be followed and that Judge Wiles' opinion in this case was in conformity with § 1563 and should be affirmed.
 
 
 
 [1]
 Reported at (1976) Memo. Tax Cases (P-H) P 76,221
 
 
 [2]
 Judge Webster in his dissent states: "The presence of the 80 per cent test only makes sense when viewed as a test of substantial financial interest by the persons in control of the corporations." Thereafter he states, "The 80 per cent financial interest requirement is meaningless unless it is the same group of five or fewer persons that own 80 per cent of each company within the controlled group." We do not agree. The 80 per cent test prevents the denial of surtax exemptions in situations meeting the 50 per cent control test if five or fewer persons do not meet the 80 per cent financial interest test. The 80 per cent test thus serves the purpose of saving the tax exemption in situations where minority stockholders own a substantial amount of the stock
 
 
 [1]
 Thomas, Brother-Sister Multiple Corporations The Tax Reform Act of 1969 Reformed by Regulation, 28 Tax L.Rev. 65, 83 (1972). See also, Bonovitz, Brother-Sister Controlled Groups Under Section 1563: The 80 Percent Ownership Test, 28 Tax Law 511 (1975). Note, Disallowance of Surtax Exemption to Brother-Sister Corporations Stock Ownership Test Under Sections 1551 and 1563, 1976 B.Y.U.L.Rev. 1000