STATE of North Dakota, Plaintiff and Appellee,

v.

Philip J. TERNES, Defendant and Appellant.

Cr. No. 595.

Supreme Court of North Dakota.

Oct. 27, 1977.

Rehearing Denied Nov. 10, 1977.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendant and appellant; argued by Irvin B. Nodland, Bismarck.

Richard L. Schnell, State's Atty., Mandan, for plaintiff and appellee.

PEDERSON, Justice.

Philip J. Ternes was charged with the murder of his wife and was convicted of manslaughter. He appeals, contending that the trial court abused its discretion in refusing to remove a part-time police officer from the jury upon challenge for cause, and further contending that the "dangerous special offender act" was improperly applied in his sentencing. We affirm the conviction.

It is settled law in North Dakota that no error can be predicated in the overruling of a challenge for cause where the appellant has not exhausted all of his peremptory challenges. *State v. Uhler*, 32 N.D. 483, 156 N.W. 220 (1916); *State v. Lesh*, 27 N.D. 165, 145 N.W. 829 (1914). See also, *Herbert v. Northern Pacific R. Co.*, 3 Dak. 38, 13 N.W. 349 (1882), *affirmed*, 116 U.S. 642, 6 S.Ct. 590, 29 L.Ed. 755 (1886). Ternes used his final peremptory challenge in removing the prospective juror, Leroy Berger, after a challenge for cause was denied. We must therefore determine whether the denial of that challenge was within the sound discretion of the trial court. We conclude that it was.

A challenge for cause in a criminal case may be based upon actual or implied bias. Section 29-17-35, NDCC. Implied bias may be based upon any or all of the enumerated causes found in § 29-17-36, NDCC, and no others. None of the causes listed are applicable in this case, nor is their application strenuously contended. (See § 28-14-06, NDCC, for challenges in civil

cases.) Section 29–17–35(2), NDCC, provides:

"The existence of a state of mind on the part of the juror, with reference to the case or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially without prejudice to the substantial rights of the party challenging, and which is known in this title as actual bias."

The existence of actual bias must be determined from the voir dire examination of the prospective juror, Leroy Berger. Berger is the son of a part-time Belfield police officer. Berger testified that he had a police badge and had substituted for his father during a period of three weeks. Berger stated that he: had never been in court before, would follow the law as instructed by the judge, had never been the victim of a crime, had heard and read about the case but remembered only part of what he had heard and read, and had no reason for being particularly interested in the case.

■ The appellant argues that a bias or prejudice on the part of a current badge-carrying police officer should be inferred. This Court is not at liberty to expand the statutory list of causes which imply bias. The answers given by the prospective juror did not convince the trial court that Berger could not try the issue impartially.

*People v. Culhane*, 33 N.Y.2d 90, 350 N.Y. S.2d 381, 305 N.E.2d 469 (1973), contains an analysis of portions of the New York Code of Criminal Procedure (since repealed) which, except for provisions not related to the problem in this case, are identical to §§ 29–17–35 and 29–17–36, NDCC. In that case a venireman with fifteen years' experience as a corrections officer was challenged for cause, even though he stated that he had formed no opinion as to the guilt of two defendants charged with the felony murder of a deputy sheriff. The New York Court of Appeals emphasized that it was unable to add to the list of implied biases because of the specific statutory language. In reversing the conviction, however, the New York court noted that the corrections officer had

made it quite clear that he would give less credence to the defendants' testimony "because of their status as prisoners." Thus actual bias was clearly shown by the testimony of the venireman.

■ The testimony of the prospective juror in the instant case does not lead us to a similar conclusion, and we find no abuse of the trial court's discretion. Nevertheless, the comment of Judge Wachtler in the *Culhane* decision appears to be an appropriate admonition for judges in this State:

"It is almost always wise for a trial court to err on the side of disqualification . . . even if a juror is wrongly but not arbitrarily excused, the worst the court will have done in most cases is to have replaced one impartial juror with another impartial juror." *People v. Culhane*, 350 N.Y.S.2d at 398, 305 N.E.2d at 481, *supra*, footnote 3.

■ Ternes next contends that the dangerous special offender statute under which he was sentenced is either unconstitutional or was unconstitutionally applied to him. We will construe a statute so as to avoid finding it unconstitutional if it is possible to do so. *Walker v. Omdahl*, 242 N.W.2d 649 (N.D.1976). We will presume the constitutionality of a properly enacted statute unless it is clearly shown to be violative of state or federal constitutions. *Gableman v. Hjelle*, 224 N.W.2d 379 (N.D. 1974).

The first subsection of the dangerous special offender statute describes the categories of special offenders. The second prescribes the possible sentences. The third establishes a procedure requiring the prosecutor to give notice to defendant of the intention to seek sentencing under the statute. The fourth establishes a hearing procedure which places upon the prosecutor the burden of showing that the defendant is a dangerous special offender by a preponderance of the evidence.

There is no allegation in this case that the length of the maximum sentence authorized is in any way improper. The hearing procedure was specifically waived. We are

asked only to decide the constitutionality of subsections 1 and 3 of § 12.1–32–09, NDCC, or to determine if they were unconstitutionally applied to Philip Ternes.

That part of § 12.1–32–09(1), NDCC, which establishes categories of special offenders applicable to this case, provides in pertinent part:

"1. A court may sentence a convicted offender to an extended sentence as a dangerous special offender in accordance with the provisions of this section upon a finding of any one or more of the following:

.        .        .        .        .

"e. The offender is especially dangerous because he used a firearm, dangerous weapon, or destructive device in the commission of the offense or during the flight therefrom."

The word "dangerous" is nowhere defined in this title or section.[1] Therefore we must construe the term in a reasonable manner consistent with the statute's purpose. Title 12.1, NDCC, follows, in very large part, a proposed new federal criminal code. See, however, 18 U.S.C., § 3575, which provides for increased sentence for dangerous special offenders. 18 U.S.C., § 3575(f), defines "dangerous" as follows:

"(f) A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the *protection of the public from further criminal conduct by the defendant.*" [Emphasis added.]

■ Because § 12.1–32–09, NDCC, and 18 U.S.C., § 3575, were both enacted to provide more lengthy sentences for particular offenders, and because the procedures used are essentially the same, it is logical that the word "dangerous" would mean the same in both statutes. In *United States v.*

*Neary,* 552 F.2d 1184 (7th Cir. 1977), the court analogized § 3575(f) to a recidivist statute and noted that the concept of dangerousness is a verbalization of considerations underlying any sentencing decision. We believe it proper to construe § 12.1–32–09, NDCC, to mean that, except as hereinafter noted, the prosecutor must show that a period of confinement greater than that normally provided as a penalty for the particular offense is required to protect the public from further criminal conduct. Because of definitive language in § 12.1–32–09(1)(e), NDCC, we conclude that this showing can be made by mere proof that the defendant used a firearm, dangerous weapon, or destructive device in the commission of an offense or during the flight therefrom.

We interpret the words of the statute as establishing four categories of special offenders who may be shown to be dangerous, and one category of special offenders who are, per se, dangerous. We cannot say that the Legislature has not the power to do that.

■ Ternes argues that the hearing procedure is rendered pointless when the state's attorney has only to show, by a preponderance of the evidence, that a felony was committed and that a firearm was used, after having already proven the same thing at the trial beyond a reasonable doubt. A sentencing hearing under § 12.1–32–09(1)(e), NDCC, permits the court to consider matters which would not be admissible in the trial itself before a jury. Accordingly, the hearing required under § 12.1–32–09(1)(e) is not superfluous.

It was argued that if we allow the prosecutor to seek an extended term while showing only what was necessary to prove the crime, we enter the undefined areas between legitimate prosecutorial discretion and the limits imposed by due process.[2]

---

1. Section 12.1–01–04(6), NDCC, defines dangerous weapon.

2. These limits were reached in cases which hold unconstitutional statutes that provide different penalties for crimes which require proof of identical elements. E.g., *State v. Pirkey,* 203

Or. 697, 281 P.2d 698 (1955); *State v. Twitchell,* 8 Utah 2d 314, 333 P.2d 1075 (1959) *Matter of Olsen v. Delmore,* 48 Wash.2d 545, 295 P.2d 324 (1956); see also, *Berra v. United States,* 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956) (per dissent by Justice Black). Cases holding that there is no due process or

*The ABA Standards Relating to the Prosecution Function and the Defense Function,* Part VI (Approved Draft, 1971), describes the role of the prosecutor in sentencing as an obligation to seek to assure that a fair and informed judgment is made on the sentence and to avoid unfair sentence disparities. We are satisfied that § 12.1–32–09, NDCC, as we have construed it, does not violate Ternes' rights to due process by providing vague penalties or by allowing the prosecutor to make legislative decisions. *So. Valley Grain Dealers v. Bd. of Cty. Com'rs,* 257 N.W.2d 425, 434 (N.D.1977). We are also satisfied that the statute, as construed, does not in other ways violate Ternes' right to equal protection. "One who attacks a statute on constitutional grounds, defended as that statute is by a strong presumption of constitutionality, should bring up his heavy artillery or forego the attack entirely." *So. Valley Grain Dealers v. Bd. of Cty. Com'rs,* 257 N.W.2d at 434, *supra.*

In this case Ternes has not made any showing that the statute was applied to him differently than to other defendants. He has only complained that it could have been used against him in plea bargaining. This allegation is not sufficient to raise the constitutional question.

■ Ternes next complains about what he calls the "weird procedure" by which § 12.1–32–09, NDCC, is to be invoked. "It is not enough to show a procedure to be unconstitutional, to say that we never have heard of it before. [Cites omitted.]" *Tyler v. Judges of the Court of Registration,* 175 Mass. 71, 55 N.E. 812, 813 (1900). It is contended that the procedure represents an unconstitutional delegation of legislative authority to the executive branch and that no guidelines exist for the exercise of the state's attorney's discretion in deciding whether or not to file a notice under this section. We cannot accept his conclusions. The state's attorney is given discretionary authority only where the defendant fits within one of five categories specified by the Legislature. This is clearly a limitation on the discretion of the prosecutor. The determination by the prosecutor to file the notice and seek an extended sentence does not end the question. Only the judge may sentence for the extended period and he may do that only after he is satisfied that the prosecuting attorney has met the burden of proving that an extended sentence is required. Unless it clearly appears that the power delegated is legislative, it cannot be held to be an unconstitutional delegation of legislative authority. See *Anderson v. Peterson,* 78 N.D. 949, 54 N.W.2d 542, 548 (1952).

■ Ternes next complains that the particularity requirement of subsection 3 was not met by the notice which the state's attorney filed. We interpret the language of § 12.1–32–09(3), NDCC, as not requiring that the notice involving § 12.1–32–09(1)(e) set out with particularity the reasons why the prosecutor believes the defendant to be a dangerous special offender when the Legislature has conclusively stated that a felon who uses a firearm is a dangerous special offender. We find that *United States v. Kelly,* 519 F.2d 251 (8th Cir. 1975) has no application here. The detailed notice by the United States in that case, held to be insufficient, carefully outlined the reasons why the defendant fit within a special offender category, but neglected entirely to allege with particularity why he was dangerous. In the case before this Court, the particularity requirement was met in the statute

equal protection violation where lesser crimes are included within greater ones are the rule, as are those holding that a prosecutor is entitled to choose between several statutes with different penalties where those statutes control similar activity, but to a different purpose or by requiring proof of different elements. *Mauney v. United States,* 454 F.2d 273 (6 Cir. 1972); *Black v. United States,* 5 Cir., 405 F.2d 187, *cert. denied,* 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969); *Hutcherson v. United States,* 120 U.S.App.D.C. 274, 345 F.2d 964, *cert. denied,* 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965). Only Illinois appears to have vested an absolute discretion in the prosecutor to charge violations of a single statute as either a felony or misdemeanor. A careful dissent in *People v. McCollough,* 57 Ill.2d 440, 313 N.E.2d 462 (1974), argues that Illinois ignores precedent to do so. See also, *State v. Hagge,* 224 N.W.2d 560 (N.D.1974).

itself. By the plain words of the statute, it is unnecessary to state precisely the charge which has been brought against the defendant. The notice that Ternes is a dangerous special offender, which was dated November 17, 1976, and was never amended, complies with the requirements of § 12.1–32–09(3) when § 12.1–32–09(1)(e) is involved.

Two additional points raised by Ternes require our comment. He argues that the statutory scheme established in § 12.1–32–09, NDCC, theoretically violates defendant's rights to due process in that (1) the judge (not knowing about the filing of the notice by the prosecutor) necessarily falsely advised the defendant of the maximum penalty, resulting in great confusion when the defense counsel (knowing that the notice had been filed) advised defendant of a potentially greater sentence; and (2) the procedure gave the state's attorney an unfair tool in plea bargaining. There is no record, but only argument presented which indicates that either of these things occurred in this case,[3] and because the 1977 Legislative Assembly removed the anomaly from the statute by allowing the judge to be advised of the notice, we need not reach these issues.

In this case the trial court briefly questioned the correctness of filing the notice, under § 12.1–32–09, in Morton County rather than Stark County where the case was tried. Ternes now argues that it was filed in the wrong court. This is a Morton County case and the filing with the clerk of the district court of Morton County was proper. The failure to forward the notice to Stark County, until after the return of the jury verdict, did not prejudice anyone and did not affect jurisdiction. *State v. Marty*, 52 N.D. 478, 203 N.W. 679 (1925).

There was no error in the trial court's refusal to remove venireman Berger for cause or in the sentencing. The conviction is affirmed.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

---

**3.** Rule 11(b)(2), NDRCrimP, requires that a court advise a defendant of mandatory minimum and maximum possible punishment be-fore accepting a plea of guilty. We have found no requirement that the court give that advice before accepting a plea of not guilty.

VOGEL, Justice, dissenting.

I dissent from that portion of the opinion which sustains the additional sentence based upon Section 12.1–32–09, N.D.C.C., the statute authorizing additional sentence if the defendant is found to be a "dangerous special offender."

I

The statute as applied in this case, prior to the 1977 amendment, required that the trial judge not be informed (until after verdict) of the filing of the notice of the State's Attorney that he invokes the dangerous special offender statute. As appellant points out, the inevitable consequence of this is that the trial judge tells the defendant one thing—that the maximum penalty for murder is 20 years' imprisonment—and the defendant's own attorney tells him something else—that the maximum penalty is life imprisonment. No matter how conscientiously the attorney attempts to explain this, a defendant is going to doubt that his attorney knows what he is talking about, or that the judge does. It is basic law that the defendant is entitled to know what conduct is proscribed by a criminal statute [*State v. Hanson*, 256 N.W.2d 364 (N.D.1977)], and I believe he is also entitled to know what the maximum penalty is if he pleads guilty or is found guilty.

He cannot know what the penalty is if he gets wildly variant information from his own attorney and from the judge.

The majority opinion attempts to dispose of this defect by saying that no record was presented to indicate that the conflicting statements were made by court and counsel. None was necessary.

We all know that committing magistrates and trial judges advise defendants as to the maximum penalty, and it is the duty of attorneys to do the same. The attorney for the defendant said in argument that a

judge and a magistrate "advised him of what charges were against him, that being a Class A murder felony carrying a maximum penalty of 20 years," and the facts were not disputed by the State's Attorney, who said he didn't know what could be said of the argument that a defendant might believe the judge rather than his own attorney.

I have no doubt that the contradictory information was given. The defendant is entitled to know what the penalty is if he is convicted. He should not have to guess.

## II

The statute provides that the State's Attorney, if he believes that the defendant is a dangerous special offender, may file a notice so stating and "setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender." The reason given in the notice filed in this case is "that Philip J. Ternes used a firearm in the commission of the offense of murder as charged in the information in the above-captioned action." This is nothing more than a statement of what the court must find as a fact before imposing additional punishment under Section 12.1–32–09, subsection (1)(e). It is not a statement "setting out *with particularity* the *reasons why*" the attorney believes him to be specially dangerous.

## III

Contrary to the majority opinion, which says that *United States v. Kelly*, 519 F.2d 251 (8th Cir. 1975), "has no application here," I say that it is in point and compellingly persuasive. In *Kelly*, the applicable statute permitted more severe sentences if the prosecutor filed in advance of trial a notice "setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender," and if the court found (as one of several alternative possible findings) that ". . . a period of confinement longer than that provided for such felony is required for the protection of the public from

further criminal conduct by the defendant." The prosecutor's statement invoking the statute alleged as his reason for doing so that "The defendant is dangerous within the meaning of [the Federal statute] requiring . . . a period of confinement longer than that provided for the offense for which he was convicted, . . . to protect the public from further criminal conduct by said defendant."

Thus, exactly as in the case before us, the prosecutor invoked the statute by alleging in the words of the statute one of the findings which the court was authorized to make in order to justify applying the statute and extending the sentence. The prosecution argued that the notice was sufficient.

The Eighth Circuit said, in language we would do well to adopt, that

". . . the plain language of the act itself defeats the government's argument. . . ." 519 F.2d at 255–256.

And,

In sum it is not for the court to say, where the language of the statute is clear, that a legislative act may encompass a more restricted meaning. We believe that the district court correctly found the notice insufficient. Under the circumstances we need not meet the more serious challenge to the act's constitutionality." 519 F.2d at 256.

## CONCLUSION

Since all the defects I have discussed relate only to sentencing, the case should be remanded for resentencing of the defendant without reference to the statute as to dangerous special offenders, which has not been properly invoked or applied in this case.