982 F.2d 526
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
Gary Dean OLSON, Appellant,
v.
Thomas POWERS, Warden, North Dakota State Penitentiary, Appellee.
 No. 92-1384.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: November 12, 1992.
Filed: December 17, 1992.
 
 1
 Before J. GIBSON and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.
 
 
 2
 BOGUE, Senior District Judge.
 
 
 3
 Gary Dean Olson, a North Dakota prisoner, appeals from a final judgment entered in the District Court[1] for the District of North Dakota, denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Olson was convicted of murdering his estranged wife in 1977. He asserts several grounds for reversal, all of which were addressed in the Magistrate's recommendation. For the reasons discussed below, we affirm.
 
 
 4
 Olson's main argument is that testimony from two cellmates should have been excluded at trial. Arnold Neukom and Lester Meddy, both of whom were Olson's cellmates during his pretrial incarceration, testified at his trial about incriminating statements he had made to them. Basically, Olson alleges that Neukom and Meddy were government agents, and that their contacts with him violated his sixth amendment right to have counsel present during questioning. As noted by Judge Klein in her recommendation, Olson did not raise this issue with regard to Mr. Meddy in the state court proceedings. Thus, this claim is barred because of his failure to exhaust his state remedies.
 
 
 5
 Admission of Mr. Neukom's testimony was challenged on direct appeal, so it will be dealt with here in more detail.[2] Olson had several discussions with Neukom while the two shared jail space. After Olson first began to discuss his case with Neukom, the latter developed a practice of relaying the information to guards. Neukom was acting on his own the entire time and received no instructions from government officials on how to elicit information-but apparently there was a tacit understanding that Neukom would get something in return (i.e. help getting charges in another jurisdiction dropped). Olson argues that under the circumstances Mr. Neukom became a government agent-thus the post-indictment discussions between the two amounted to interrogations, in violation of his sixth amendment right to counsel. See Massiah v. United States, 377 U.S. 201 (1964) (holding that the contents of a secret interrogation of a defendant by a bugged co-defendant were not admissible).
 
 
 6
 The facts in this case closely parallel those dealt with by the Seventh Circuit Court of Appeals in United States ex rel. Milani v. Pate, 425 F.2d 6 (7th Cir.), cert. denied, 400 U.S. 867 (1970). There, the Court ruled that a similar tripartite arrangement between the authorities, the informant, and the defendant evidenced "something less than that degree of police participation in an interrogation to which Massiah was directed." Id. at 8. We agree with the reasoning in Milani. Olson's discussions with Neukom did not amount to "interrogations by a government agent," thus there was no constitutional requirement that counsel be present.
 
 
 7
 Olson next argues that publicity which occurred during his trial unfairly prejudiced some of the jurors. Four of the jurors read a newspaper article about Olson's trial during a recess, despite the trial judge's admonition not to do so. Upon learning of this, the trial judge carefully interrogated them to insure that they had not been influenced by the story. Defense counsel agreed that the court's inquiry was sufficient.[3] The burden is on Olson here to show that the jury was prejudiced by the news accounts. Frank v. Brookhart, 877 F.2d 671, 675 (8th Cir. 1989), cert. denied, 493 U.S. 1027 (1990). He adduces nothing beyond his bare assertion of prejudice to meet this burden; therefore the argument fails.
 
 
 8
 Olson's third argument is that Lester Meddy was endorsed as a witness too late for Olson's attorney to meaningfully counter his testimony-thus creating a due process violation for lack of notice. We disagree. Mr. Meddy agreed to testify two days before the trial began, and the prosecutor notified defense counsel that same day. After several days of trial, the prosecutor formally requested that Meddy's name be endorsed on the information. The trial court denied Olson's request for a continuance; however it did allow his attorney to interrogate Meddy before he testified, and gave him a weekend to further investigate Meddy's testimony before cross-examination. Under these circumstances it cannot be said that due process notice requirements were violated.
 
 
 9
 Next, Olson alleges that North Dakota's Special Dangerous Offender Statute,[4] under which his sentence was enhanced, is an unconstitutional delegation of legislative authority to the executive branch. We agree with the North Dakota Supreme Court[5] that the statute does not delegate an inordinate amount of legislative authority to prosecutors. The statute gives prosecutors discretion to seek a harsher sentence for certain offenders. Similarly, prosecutors have discretion to decide who to indict and for what offenses. Just as the latter example is not an improper delegation, neither is the former. More importantly, the ultimate sentencing decision is left to the court, not the prosecutor.
 
 
 10
 Finally, Olson contends that newly-discovered evidence warrants a new trial. Again, we disagree. The new evidence Olson refers to is a newspaper account in which Mr. Neukom admitted to perjuring himself in another murder trial. This Court has said that a new trial will not be ordered in habeas corpus proceedings based on newly discovered evidence unless the petitioner shows that the evidence would likely produce an acquittal on retrial. Miles v. Nix, 911 F.2d 146, 148 (8th Cir. 1990). Olson has not met this burden. While the article would have tended to impeach Neukom generally, it has no direct bearing on the truthfulness of his testimony in this proceeding. Further, Neukom was impeached on cross-examination by the facts that he had several prior felony convictions (including forgery, a crime of dishonesty); and that he was testifying against Olson to further his own causes. Under the circumstances, it cannot be said that the newspaper article would have led the jurors to a different conclusion.
 
 
 11
 Based on the foregoing, we affirm the judgment of the district court denying habeas relief.
 
 
 
 *
 The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Rodney S. Webb, Judge, United States District Court for the District of North Dakota. Judge Webb's order of dismissal followed a recommendation made by Honorable Karen K. Klein, United States Magistrate Judge, United States District Court for the District of North Dakota. The reasons for dismissal are spelled out in Judge Klein's recommendation
 
 
 [2]
 It should be noted that in Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court ruled that federal habeas corpus would not be employed to entertain allegations of fourth amendment violations by state prisoners who had a full and fair opportunity to litigate their claims in the state's courts. Currently pending before that Court is Withrow v. Williams, No. 91-1030 (argued November 2, 1992). In Withrow, the Court is called upon to decide whether the Stone rule applies to claimed Miranda [v. Arizona, 348 U.S. 436 (1966) ] violations. The Withrow decision could moot the claim being considered here, but it may be some time before that opinion is issued. Therefore, in the interests of expediency, we will address the merits of Olson's claim as to Mr. Neukom
 
 
 [3]
 The colloquy between the trial judge and jurors, and defense counsel's satisfaction with it, are recounted in the opinion of the North Dakota Supreme Court on Olson's direct appeal. State v. Olson, 274 N.W.2d 190, 192-93 (N.D. 1978)
 
 
 [4]
 N.D. Cent. Code § 12.1-32-09
 
 
 [5]
 State v. Ternes, 259 N.W.2d 296, 300 (N.D. 1977), cert. denied, 435 U.S. 944 (1978); State v. Olson, 274 N.W.2d 190, 196 (N.D. 1978)